NOT FOR PUBLICATION                                                    (Doc. No. 49)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| JONATHAN HUDGON, : | |
| : | |
| Plaintiff, : | Civil No. 07-3626 (RBK/AMD) |
| : | |
| v. : | **OPINION** |
| : | |
| SERGEANT ARTHUR LAFLEUR, : | |
| OFFICER CHURCH, OFFICER HILES, : | |
| OFFICER FAUCONNIERE, : | |
| CUMBERLAND COUNTY, and : | |
| CUMBERLAND COUNTY : | |
| CORRECTIONAL FACILITY, : | |
| : | |
| Defendants. : | |

**KUGLER**, United States District Judge:

This case serves as something of a cautionary tale to those individuals presently

contemplating the wisdom of super-gluing body piercings to their face prior to incarceration.

This matter comes before the Court upon a motion by Defendants Cumberland County,

Cumberland County Department of Corrections, Correctional Officers J. Church, Ryan Hiles, K.

Fauconniere, and Sergeant Arthur LaFleur (collectively, "Defendants") for summary judgment.

Plaintiff Jonathan Hudgon's Amended Complaint bring claims against Defendants pursuant to 42

U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1, et seq.,

alleging violations of the Eighth and Fourteenth Amendments.  For the reasons expressed below,

the Court will grant in part and deny in part Defendants' motion for summary judgment.

1

## I.      BACKGROUND

At times relevant to this lawsuit, Mr. Hudgon was incarcerated at the Cumberland County Correctional Facility (the "Jail").  Following a trip to the nurse's office on August 2, 2005, Mr. Hudgon was brought to Sergeant LaFleur's post.  Sergeant LaFleur requested that Mr. Hudgon remove a diamond stud nose ring he was wearing.  Mr. Hudgon advised Sergeant LaFleur that the nose ring was super-glued into his nose and could not, for that reason, be removed.  Sergeant LaFleur offered Mr. Hudgon a pocket-sized, multi-tool device, open to a pair of pliers, to remove the nose ring.  Mr. Hudgon refused to use the tool to remove the nose ring.  Sergeant LaFleur indicated that Mr. Hudgon would be placed into solitary confinement until he removed the jewelry.  A struggle ensued, the facts of which are disputed.

Mr. Hudgon claims that Sergeant LaFleur tried to forcibly remove his nose jewelry with the pliers.  According to Mr. Hudgon, as Sergeant LaFleur "menaced" him with the "crude device," Mr. Hudgon instinctively put his hands up to cover his face in self-defense.  Mr. Hudgon further claims that this protective gesture caused other officers, including Officers Woodward, Church, Fauconniere, and Hiles to force Plaintiff to the ground, put his hands behind his back, and kick, punch, and knee him about his body.[1]  Mr. Hudgon claims that his head was face-down on the ground for most of the beating.  As a consequence, Mr. Hudgon has had a difficult time identifying which officers handled him inappropriately.

Defendants claim that Sergeant LaFleur instructed Mr. Hudgon to remove his own jewelry in accordance with Jail policy.  Sergeant LaFleur claims that he offered Mr. Hudgon his

---

[1]  Mr. Hudgon believes he may have been at least partially handcuffed to a metal bench at some point before or during this encounter.

multi-tool for this purpose.  According to Sergeant LaFleur, when Mr. Hudgon refused him, he approached Mr. Hudgon with handcuffs and told him that he would be placed in solitary confinement until he complied.  At this point, Mr. Hudgon resisted being arrested, and Sergeant LaFleur used force to physically restrain him so that handcuffs could be placed on his wrists.

After the incident, Mr. Hudgon was taken to the nurse's office for treatment because his face was apparently bloodied.  Mr. Hudgon claims that he was eventually transported to Bridgeton Hospital for treatment related to the incident.  Although Mr. Hudgon is no longer an inmate at the Prison, he alleges that he continues to suffer emotional distress and physical pain.

On August 2, 2007, Mr. Hudgon filed a Complaint against Defendants without the assistance of counsel.  Plaintiff subsequently retained counsel and moved to amend the Complaint.  On November 12, 2009, Magistrate Judge Donio granted Plaintiff's motion to amend insofar as Plaintiff sought to clarify his § 1983 claim, add a NJCRA claim, and add Cumberland County and Cumberland County Department of Corrections as defendants. Magistrate Judge Donio denied Plaintiff's motion insofar as he sought to add Correctional Officer Woodward as a defendant.  The Amended Complaint sounds in two counts, alleging violations of 42 U.S.C. § 1983 and the NJCRA against Sergeant LaFleur, Correctional Officers Church, Fauconniere, and Hiles (collectively, "Individual Defendants") as well as against Cumberland County and Cumberland County Correctional Facility (collectively, "County Defendants").  On December 30, 2009, Defendants filed the instant motion for summary judgment.  Plaintiff opposed the motion on February 1, 2010, and Defendants replied on February 17, 2010.  The motion is now ripe for disposition.

3

## II.     LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those

4

facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 Fed. Appx. 353, 354 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

Defendants' arguments in support of summary judgment are three. First, Defendants argue that Plaintiff's own testimony establishes that he was struck only by Officer Woodward, who is not a party to this action. Second, Defendants argue that no reasonable fact-finder could determine that the actions of the Individual Defendants exceeded reasonable force. Finally, Defendants argue that Plaintiff has provided no factual support for the claim that the County Defendants have a policy or practice of violating the civil rights of inmates. Disputed factual issues make summary judgment on the claims against the Individual Defendants inappropriate. On the other hand, summary judgment on the claims against the County Defendants is warranted because Plaintiff has not set out specific facts demonstrating a triable issue on county liability.

### A.   Individual Defendants

Defendants argue that summary judgment should be entered in favor of the Individual Defendants because these officers used reasonable force to restrain Mr. Hudgon and because Plaintiff has apparently admitted that none of them punched, kicked, or kneed him.

5

The use of excessive force against a prisoner may violate the Eighth Amendment's prohibition against cruel and unusual punishment.  Wilkins v. Gaddy, -- U.S. --, 130 S. Ct. 1175, 1177 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 4 (1992).  "The test for whether a claim of excessive force is constitutionally actionable is 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  The district court should consider: (1) the need for the force; (2) how much force was used in relation to the need; (3) the extent of the inflicted injury; (4) the extent of the safety threat, as reasonably perceived by the responsible officials on the basis of the facts they knew; and (5) efforts made to ameliorate the severity of a forceful response.  Id. (citing Whitley, 475 U.S. at 319).

The parties dispute exactly what precipitated the incident in question.  As noted, Sergeant LaFleur contends that he instructed Mr. Hudgon to remove his own jewelry and offered him pliers to assist him in this regard.  Sergeant LaFleur further contends that, after Mr. Hudgon refused, he approached him with a pair of handcuffs in an attempt to place him under arrest and move him to solitary confinement until he complied.  By way of contrast, Mr. Hudgon contends that, after ordering him to remove the jewelry himself, Sergeant LaFleur approached him with the pliers and would have used the pliers to forcibly remove Mr. Hudgon's nose ring had he not instinctively placed his hands in front of his face to block Sergeant LaFleur's attempt to rip the jewelry out.  Both agree that the physical contact between Mr. Hudgon and Sergeant LaFleur caused surrounding officers to come to Sergeant LaFleur's aid and subdue Mr. Hudgon.

The parties also dispute the nature of the force used in subduing Mr. Hudgon.  At a

6

minimum, all agree that Mr. Hudgon was taken to the ground, held there for a short time, and placed in handcuffs before being taken back to his feet. Defendants take the position that this was the extent of the force utilized by the Individual Defendants. By way of contrast, Plaintiff insists that he was kneed in the back, slammed to the ground by Woodward, Church, and Hiles, and was repeatedly kicked, punched, and kneed in the back and ribs by multiple officers including, but not limited to, non-party Officer Woodward. Unfortunately, Mr. Hudgon does not know exactly which correctional officers struck him, which is understandable given that he was lying face down on the ground during the alleged beating.

Defendants contend that summary judgment is appropriate as to the Individual Defendants because Plaintiff apparently concedes that none of the Individual Defendants were involved. This overstates Plaintiff's record admissions. On the one hand, Plaintiff did testify at his deposition that Officer Hiles did not strike him. (Pl.'s Dep. at 62:12-13). Moreover, Plaintiff admits that Sergeant LaFleur did not "assault" him. (Pl.'s Resps. to Defs.' Stat. of Mat. Facts ¶ 13.) On the other hand, Plaintiff did not necessarily testify that Officer Church did not strike him. At his deposition, Plaintiff was asked: "Did you see Church actually strike you?" (Pl.'s Dep. at 58:24-25.) Plaintiff responded: "No, I didn't see Church actually strike me. He was just restraining me." (Id. at 59:1-2.) This statement is not necessarily inconsistent with the proposition that Officer Church struck Plaintiff at some point in the struggle. Moreover, although Plaintiff's deposition is largely silent as to Officer Fauconniere, Plaintiff does not concede that Fauconniere did not strike him.[2] (Pl.'s Resps. to Defs.' Stat. of Mat. Facts ¶ 16.)

---

[2] In a previous proceeding in municipal court on Plaintiff's criminal complaint against Prison officers arising out of this incident, Plaintiff was unable to identify Officer Fauconniere, and as a consequence, Officer Fauconniere was dismissed. In his subsequent testimony at that

These fact issues make summary judgment inappropriate at this time.  As an initial

matter, Mr. Hudgon objects to the level of force used to take him to the ground and hold him

there.  Defendants take the position that the level of force used was not excessive because Mr.

Hudgon admits that he was struggling with the officers.  However, Mr. Hudgon has testified that

he was partially handcuffed to a bench when he was "slammed" to the ground by several officers

and that he resisted only (or at least initially) Sergeant LaFleur's attempt to rip jewelry out of his

nose.  It is not the province of the district court to make credibility determinations at summary

judgment.  BMW, Inc., 974 F.2d at 1363.  Depending upon how much of Mr. Hudgon's version

of events are believed, it is not outside the realm of possibility that a reasonable fact-finder would

conclude that the level of force used to subdue him was excessive.  But see Smart v. Borough of

Lindenwold, No. 07-6102, 2010 WL 891344, at *3 (D.N.J. Mar. 9, 2010) (quoting Carswell v.

Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004)) ("Reasonableness is to be evaluated

from the 'perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight.'").

More importantly, a fact-finder could certainly conclude that the alleged repeated

punching, kneeing, and kicking was constitutionally excessive.  See, e.g., Clinton v. Jersey City

Police Dep't, No. 07-5686, 2010 WL 551463, at *6 (D.N.J. Feb. 16, 2010) (denying defendants'

motion for summary judgment on plaintiff's excessive force claim where plaintiff testified that

he was wrestled, kicked, and beaten by arresting officers).  See also Giles v. Kearney, 571 F.3d

318, 327 (3d Cir. 2009).  The fact that Mr. Hudgon only saw one of his alleged assailants (non-

---

proceeding, however, Plaintiff accused Officer Fauconniere of striking him on the way to the
nurses station subsequent to the incident.

party Woodward) does not mean that he admits that the other officers involved in the incident did not strike him.  To the contrary, Plaintiff's testimony makes clear that he believes that multiple officers struck him with fist or foot while he was face-down on the ground.  His inability to identify the officers involved by name does not necessarily mean that he cannot prove liability circumstantially.[3]  See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002); Abrahante v. Johnson, No. 07-5701, 2009 WL 2152249, at *9 (D.N.J. July 14, 2009); D'Arrigo v. Gloucester City, No. 04-5967, 2007 WL 1755970, at *12 (D.N.J. June 19, 2007).

Defendants also object to what the parties refer to as Sergeant LaFleur's potential supervisory liability.  A supervisor may be subject to personal liability under § 1983 if he "participated in violating the plaintiff's rights, directed others to violate them, or as the person in charge, had knowledge of and acquiesced in his subordinates' violations.  A.M. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 586 (3d Cir. 2004).  A correctional officer that fails to intervene in an inmate beating can be liable for an Eight Amendment violation if the officer had a reasonable opportunity to intervene and simply refused.  Smith, 293 F.3d at 650.  Refusal to intervene liability is not foreclosed by the disputed facts articulated above.  Although Defendants claim that the allegedly improper behavior happened so quickly as to make intervention impossible, Plaintiff's testimony leaves open the inference that the ordeal lasted long

---

[3]  Defendants also argue that the Court should only consider Mr. Hudgon's sworn deposition testimony and should not consider Plaintiff's previous "sham" testimony that is apparently at odds with that of his deposition.  Defendants do not identify this testimony.  In any event, the Court need not consider this argument because the Court does not read Mr. Hudgon's deposition testimony as standing for the proposition that no officer other than Woodward ever struck him.

enough for Sergeant LaFleur to intercede.[4]  Summary judgment as to the Individual Defendants is inappropriate on this disputed factual record.

### B.      County Defendants

Defendants argue that Plaintiff has failed to come forward with evidence supporting the liability of the County Defendants under <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691 (1978).  Under § 1983, a local government entity cannot be held liable solely on a theory of respondeat superior.  <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691 (1978).  Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id.</u> at 694.  In other words, a municipality is only liable for the actions of an individual employee or officer when that person's conduct "implements official policy or practice."  <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 245 (3d Cir. 2006).  An individual's actions implements official policy or practice in several circumstances, including when:

> (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purpose by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

---

[4]  Defendants do not address the matter, but non-supervisors may also be liable for failure to intervene.  <u>See</u> <u>Smith v. Mensinger</u>, 293 F.3d 641, 650 (3d Cir. 2002) ("We hold that a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so.  Furthermore, we hold that a corrections officer can not escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers.").  This is another reason why summary judgment is inappropriate as to all of the Individual Defendants.

Id.

The Court agrees with Defendants that Plaintiff has not presented evidence of the County Defendants' liability.  First of all, a jail is not a "person" under § 1983.  See, e.g., Morgan v. Irvington Police Dep't, No. 10-292, 2010 WL 2035966, at *4 (D.N.J. May 21, 2010); Mora v. Camden County, No. 09-4183, 2010 WL 2560680, at *10 n.6 (D.N.J. June 21, 2010); Petaway v. City of New Haven Police Dep't, 541 F. Supp. 2d 504, 510 (D. Conn. 2008).  As to Cumberland County, Plaintiff's opposition brief does not point to any evidence that the Jail has an official policy or practice of using excessive force against inmates generally or against inmates sporting body piercings specifically.  To the contrary, Plaintiff's opposition brief repeatedly refers to the Jail's official policy, which Plaintiff concedes requires inmates to remove their own jewelry and prohibits non-medical personnel from conducting body cavity searches, to which Plaintiff analogizes the alleged, attempted nose ring removal.  The deposition testimony of several of the Individual Defendants supports the existence of such a policy.

In fact, Plaintiff's opposition brief does not explicitly address the County Defendants at all.  Instead, it focuses on the Individual Defendants and what it refers to as the supervisory liability of Sergeant LaFleur.  As noted, Plaintiff contends that Sergeant LaFleur stood by and watched as his subordinates beat Mr Hudgon, thus sending a message to these officers that their unconstitutional conduct was acceptable.  If true, these facts could support individual liability against Sergeant LaFleur even though he did not personally assault Mr. Hudgon.  See Smith, 293 F.3d at 650.  However, this inaction would not, as Plaintiff's papers may be read to suggest, extend liability to the County Defendants.  A failure to train, discipline, or control claim only forms the basis for § 1983 municipal liability where the plaintiff shows "both contemporaneous

knowledge of the offending incident or knowledge of a prior pattern of similar incidents and

circumstances under which the supervisor's actions or inaction could be found to have

communicated a message of approval to the offending subordinate."[5]  Montgomery v. De

Simone, 159 F.3d 120, 127 (3d Cir. 1998).

As in any case where a defendant believes it is entitled to summary judgment because the

Plaintiff lacks evidence to carry its burden of proof, Defendants here are in the difficult position

of having to demonstrate a negative.  Nonetheless, Defendants' motion for summary judgment

clearly takes the position that Plaintiff lacks evidence sufficient to establish municipal liability.

The Court's independent review of the exhibits in the record does not contradict Defendants'

position.  Therefore, to maintain his case against the County Defendants, it was incumbent upon

the Plaintiff to point to, or come forward with, some evidence that supports a municipal policy or

practice of unconstitutional behavior, not simply to rest on allegations in the Complaint.

Plaintiff has not even attempted to discharge this obligation.  For example, Plaintiff does

not present evidence of an official Prison policy of violating prisoners' rights.  He does not

present evidence (or even argue for that matter) that Sergeant LaFleur is a policy-maker at the

Prison.  Plaintiff does not point to evidence that the sort of "looking the other way" that he

attributes to Sergeant LaFleur is so frequent an occurrence at the Prison so as to constitute

custom.  Plaintiff does not offer evidence that inmates with body piercings are routinely menaced

with tools or beaten.  Plaintiff does not point to any series of abuses of which the County

---

[5]  The cases cited by Plaintiff do not hold differently.  For example, in A.M. v. Luzerne County Juvenille Detention Center, cited by Plaintiff, the Court held that a supervisor's inaction could form the basis for municipal liability where the supervisor was also a policy-maker.  372 F.3d 572, 586 (3d Cir. 2004).  As discussed in the text that follows, there is no allegation or evidence suggesting that Sergeant LaFleur made Prison policy.

Defendants were aware and deliberately chose not to address.  Plaintiff's failure to point to

evidence of this nature is fatal to his claims against the County Defendants.[6]

IV.     CONCLUSION

        For the reasons expressed above, the Court will deny Defendants' motion for summary

judgment against the Individual Defendants, and will grant Defendants' motion for summary

judgment against the County Defendants.  An appropriate order shall enter.


Dated: 7-22-2010                                   /s/ Robert B. Kugler
                                                   ROBERT B. KUGLER
                                                   United States District Judge

---

        [6] The Court will also grant summary judgment to the County Defendants on Plaintiff's
NJCRA claims.  Modeled after § 1983, the NJCRA "creates a state law cause of action for
violations of an individual's federal and state constitutional rights."  Nieves v. Ortiz, No. 06-
5206, 2008 WL 4004940, at *12 (D.N.J. Aug. 20, 2008) (citing Owens v. Feigin, 947 A.2d 653
(N.J. 2008)).  The NJCRA prohibits "a person" from (1) depriving another person of a right; or
(2) interfering with another person's rights by way of threat, intimidation, coercion, or force.
N.J. Stat. Ann. § 10:6-2; Felicioni v. Administrative Office of Courts, 961 A.2d 1207, 1218 (N.J.
Super. Ct. App. Div. 2008).  Apparently, "[c]ourts have repeatedly construed the NJCRA in
terms nearly identical to its federal counterpart: Section 1983."  Chapman v. New Jersey, No. 08-
4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009).  Defendants argue that county liability
under the NJCRA is coextensive with county liability under § 1983.  Plaintiff does not respond to
this argument and thus appears not to contest it.  In light of Plaintiff's failure to respond, the fact
that both statutes require the sued party to be a "person," and the fact that the NJCRA was
modeled on § 1983 and has been interpreted consistent with it, the Court sees no reason not to
interpret the NJCRA consistent with Monell as precluding municipal liability absent an official
pattern or practice.  As noted, Plaintiff has not presented evidence of an official pattern or
practice in this case.